## EXTENSION OF PERIOD FOR PAYMENT OF TAXES.

[Circuit Court of Cuyahoga County.]

THE STATE OF OHIO, EX REL FREDERICK C. BEYER, v. JAMES P. MADIGAN, AS TREASURER OF CUYAHOGA COUNTY.*

Decided, October 29, 1906.

*Constitutional Law—Taxation—Collection of Taxes—Statutory Provisions Which are not of Uniform Operation—Section 1365-25—Mandamus—County Commissioners—County Treasurer.*

While the subject of taxation is general in its nature, requiring uniformity of operation throughout the state, the provision in Section 1365-25 giving to county commissioners power to extend for thirty days, at their discretion, the time for the payment of taxes, although limited to "counties containing a city of the second grade of the first class," must be regarded as a provision suited to certain localities and merely regulative of the mode of receiving taxes in such localities, and is therefore constitutional.

HENRY, J.; WINCH, J., and MARVIN, J., concur.

This mandamus proceeding involves but one question, viz., the constitutionality of the last clause of Revised Statutes, Section 1365-25. This section was originally part of an act fixing the salaries of county officers in Cuyahoga county; and, so far as that subject-matter is concerned, it is confessedly unconstitutional, under recent rulings of the Supreme Court, particularly *State, ex rel,* v. *Yates, Auditor,* 66 O. S., 546, as being an act of a general nature not of uniform operation throughout the state. The section here in controversy reads:

"It shall be the duty of the county commissioners to see that the provisions of this act are faithfully complied with, and that the county commissioners shall also have power to extend at their discretion for thirty days, the time for the payment of taxes."

The petition here alleges that the commissioners have passed a resolution extending the time for the payment of the first half of the taxes for the current year from December 20, 1906, to January 19, 1907; but that the defendant, as county treasurer, has publicly and officially declared that he will insist upon the

* Reversed by the Supreme Court November 27, 1906.

payment of said taxes by the former date, and that he will not be governed by said resolution. The petition further alleges that the relator, as a tax-payer of said county, and all others in like case, will incur a penalty should they erroneously rely upon the right of said county commissioners to direct and control the conduct of the treasurer in that respect. To this petition the defendant has demurred.

It is, of course, true, that if the commissioners' resolution and the statutory provision on which it is founded are invalid, the treasurer in pursuance of his duty to collect taxes due, may, after December 20, 1906, resort to distress or other summary remedy prescribed by law to collect taxes payable on that date together with a five per cent. penalty thereon.

The sole contention made by the defendant here is that the section referred to is unconstitutional. In its present form this section was enacted May 12, 1902 (95 O. L., 573) as "An act to amend Section 1365-25 of the Revised Statutes of Ohio." It was originally enacted April 12, 1889 (86 O. L., 64),. as part of "An act relating to the duties and compensation of certain county officers and their assistants, in counties containing a city of the second grade of the first class."

It is admitted that Cuyahoga county is embraced within these descriptive words and that the act applies to no other county. It is true, also, that the constitutionality of that part of the act which relates to the time of paying taxes in Cuyahoga county is not necessarily involved in the fate of that portion which relates to the subject of salaries of county officers in this county, and which was passed upon in a former decision of this court. Nor is the style and form of this act, as distinguished from its subject-matter, conclusive against it. *State, ex rel,* v. *Bloch,* 65 St., 370.

As is well known, the recent decisions of the Supreme Court have revolutionized the principles of constitutional interpretation, as applied to the judicial construction of the meaning and application of the expressions "general laws," "laws of a general nature" and "special acts" as contained in the Constitution of this state. In *State, ex rel,* v. *Spellmire et al,* 67 O. S., 77, the rule is laid down in the first paragraph of the syllabus as follows:

"Whenever a law of a general nature having a uniform operation throughout the state, can be made fully to cover and provide for any given subject-matter, the legislation, as to such subject-matter, must be governed by general laws, and local or special laws can not be constitutionally enacted as to such subject-matter."

In that case the subject-matter of schools and school districts was declared to be of a general nature. In a previous decision, that of *Hixson* v. *Burson*, 54 O. S., 470, roads and highways had been declared to be a subject-matter of a general nature.

*Gentsch* v. *State*, 71 O. S., 151, presents serious difficulties. There an act was held valid prescribing a time for keeping the polls open at elections in cities with a population of 300,000, or more, different from that prescribed by the same act for other parts of the state. It was held that the subject-matter of the act, to-wit, elections, was of a general nature, but that the uniformity of its operation was not negatived by the special provision for cities above a certain size. The act was, indeed, in "operation throughout the state," and it was *held* to be "of *uniform* operation throughout the state."

It is argued that this decision, though correct as to the result, might better have been put on another basis. . For mere regulative details with respect to the conduct of elections in different localities to meet special conditions, may well be considered a subject local in its nature, and hence a proper subject of local or special legislation, though the elective franchise and substantive laws governing its exercise are of a general nature and must, therefore, be of uniform operation throughout the state. Thus it is claimed that the provision of law under consideration in *State* v. *Gentsch*, might well be deemed to be of a local nature, and hence not required to be of uniform operation throughout the state.

And it is, indeed, upon a precisely similar distinction that the decision in *Silberman* v. *Hay*, 59 O. S., 582, is discriminated from that of *McGill* v. *State*, 34 O. S., 228. The one case held invalid the law prescribing restrictions upon the right of jury trial in Cuyahoga county different from those obtaining elsewhere. The other case upheld a law prescribing a method of selecting persons for jury duty in this county different from that provided for

other counties. Superficially the subject-matter of both acts would seem to be the same, to-wit, juries, a subject manifestly of a general nature. Actually, however, there are two subjects, to-wit, the right of jury trial and the selection of persons for jury duty. The former is clearly of a general nature; the latter, a matter solely for administration, to be regulated according to local exigencies. And it was so held. The second paragraph of the syllabus of *McGill* v. *State* is as follows:

"The act of May 7, 1877, (74 Ohio L., 218), regulating the selection of jurors for the county of Cuyahoga, is not a law of a general nature within the meaning of Section 26, Article II, of the Constitution."

In *Silberman et al* v. *Hay*, 59 O. S., 589, it was said by Minshall, J., at page 589:

"The law here in question affects the right of trial by jury—a subject of general interest throughout the state; the law considered in the McGill case simply affects the mode of selecting electors for jury service; and in this regard, local circumstances may, in the interests of the integrity of the system, require special legislation."

In the case before us, if the subject-matter of this portion of the act be deemed to be taxation, it is, of course, of a general nature, requiring uniform operation throughout the state. But if the subject-matter here be deemed to be the regulation of the mode and time of receiving payment of taxes, it is not clearly of a general nature. May it not be true that the times and methods of selecting persons for jury service, and of receiving payment of taxes, are matters of regulative detail capable of being fixed and determined by reasonable local or special laws suited to the exigencies of each case and the real needs of each locality as the Legislature shall determine? True, the case of *Gentsch* v. *State, supra*, is apparently put by the Supreme Court on a different footing; and the case of *McGill* v. *State, supra*, is severely criticized in *State, ex rel*, v. *Spellmire, supra*. But when *Silberman* v. *Hay, supra*, was decided, the Supreme Court had already announced the doctrine of *Hixson* v. *Burson, supra*, and there was a clear opportunity, nay a clear duty, to reverse *McGill* v. *State*, if such reversal were ever contemplated.

It is evident from the foregoing that the law now under consideration is far from being clearly an act of general nature; and hence the want of universal operation territorially throughout the state is not manifestly fatal to its validity.  The Legislature may well have been actuated in passing this law by considerations of local conditions which require a longer time for the preparation of the duplicate and the receipt of taxes in a county containing a city of the magnitude of Cleveland.  Revised Statutes, Section 2863, also recognizing this situation, gives the auditor forty days more in this county for the delivery to the treasurer of his duplicate, than is given in other counties.  Revised Statutes, Section 2864, gives him a fortnight longer to prepare and publish his delinquent land list.  The statutes abound in other like exceptions.  Much and grievous harm might easily result not only to the local tax-payers and to this community generally, but even to the integrity of the taxation system in the state, if the courts were to declare as a matter of law, that the Legislature could and should have passed adequate general laws of uniform operation throughout the state on the subject of the time and manner of receiving payment of taxes in each and every county, great and small alike.  No inconvenience can result to the public from a judicial recognition of the sound discretion of the Legislature in thus interpreting its own constitutional duty in this behalf.

The rule of interpretation laid down for the courts is that expressed by Spear, J., in *Marmet* v. *State*, 45 O. S., 63, at page 64:

"If the law, as to the provisions involved in this inquiry, is shown to be *clearly, palpably* in conflict with the Constitution, so that there is no doubt or hesitancy in the mind of the court, it should be so held.  But if there be any doubt upon the subject, that should be solved in favor of the law, and the court should decline to interfere."

Holding the views thus expressed, we are of the opinion that the demurrer to the petition should be overruled, and it will be overruled, and a mandatory writ will be issued as prayed for, provided the plaintiff cares to avail himself of the right to amend his petition by interlineation, so as to include an express allegation of the admitted fact that Cuyahoga county was a county

containing a city of the first class, second grade, at the time this law was made.

*R. A. Wilbur*, for plaintiffs.

*Blandin, Rice & Ginn*, for defendant.